IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-157-FL

| | |
|---|---|
| RACHELLE CHAPMAN, individually and on behalf of all other similarly situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>M.M. FOWLER, INC., d/b/a Family Fare Convenience Store, a North Carolina Corporation, )<br>)<br>)<br>Defendant. ) | ORDER |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and motion to strike (DE 12). Plaintiff responded in opposition, and defendant replied. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion (DE 12) is granted.

## STATEMENT OF THE CASE

Plaintiff commenced this putative class action April 18, 2019, under Title III of the Americans with Disability Act ("ADA"), 42 U.S.C. § 12181 et seq., alleging that several facilities owned, operated, or leased by defendant present accessibility barriers in parking lots and paths of travel. Plaintiff seeks declaratory and injunctive relief, as well as costs and attorneys' fees.

On July 1, 2019, defendant filed the instant motion to dismiss, arguing that plaintiff lacks standing to sue, or alternatively, fails to state a plausible claim for relief. Also in the instant motion, defendant seeks to strike plaintiff's class allegations. Plaintiff responded in opposition, and defendant replied.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. Plaintiff, a resident of Knightdale, North Carolina, suffered a spinal cord injury in 2010 and now relies on a wheelchair for mobility. Defendant does business as Family Fare Convenience Stores, which sells grocery items and gasoline at various locations throughout North Carolina.

Within the last year, plaintiff visited defendant's location at 122 W. Peace Street in Raleigh, North Carolina, ("Peace Street location") and experienced "unnecessary difficulty and risk due to excessive slopes in a purportedly accessible parking area." (Pl. Compl. (DE 1) ¶ 23). As a result, plaintiff's "ability to access and safely use defendant's facilities has been significantly impeded." (Id. ¶ 24). Despite this impediment, plaintiff plans to return to the Peace Street location at least six times a year because "[i]t is convenient for her to stop by regularly to [sic] when she visits a friend in the area, or on one of her regular trips downtown." (Id. ¶ 24). Moreover, plaintiff intends to return to ascertain whether the facility remains in violation of the ADA. (Id.).

While examining multiple locations owned, operated, or leased by defendant, investigators acting on plaintiff's behalf measured the surfaces of one or more "accessible routes" and found: 1) a 26.2% slope at the Peace Street location; 2) a 9.9% slope at 4000 New Bern Avenue in Raleigh, North Carolina; 3) a 14.2% slope at 308 South Alston Avenue in Durham, North Carolina; and 4) a 7.4% slope at 3804 North Duke Street in Durham, North Carolina. (Id. ¶ 31). According to plaintiff, these slope measurements are ADA violations and constitute "evidence that the inaccessibility Plaintiff experienced is not isolated, but rather, is caused by Defendant's systemic disregard for the rights of individuals with disabilities." (Id. at 32). Furthermore, the alleged violations "demonstrate that Defendant either employs policies and practices that fail to design, construct and alter its facilities so that they are readily accessible and usable and/or that Defendant

2

employs maintenance and operation policies and practices that are unable to maintain accessibility." (Id. ¶ 33).

Plaintiff alleges that, "absent a change in Defendant's corporate policies and practices, access barriers are likely to reoccur in Defendant's facilities even after they have been remediated." (Id. ¶ 34). Therefore, plaintiff seeks an injunction to remove the alleged barriers at defendant's facilities and to modify the current policies and practices that allegedly created them, on behalf of herself and the following nationwide putative class:

> All person with qualified mobility disabilities who were denied the full and equal enjoyment of the goods, services, facilities, advantages or accommodations of any M.M. Fowler location in the United States on the basis of disability because such persons encountered accessibility barriers due to Defendants' failure to comply with the ADA's accessible parking and path of travel requirements.

(Id. ¶¶ 35—36).

## COURT'S DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Where, as here, a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual

allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, the "court accepts all well pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B. Analysis

1. Standing

It is well established that standing is a threshold jurisdictional issue that must be determined first because "[w]ithout jurisdiction the court cannot proceed at all in any cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (citations omitted). The Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must show 1) an "injury in fact," meaning an injury that is "concrete and particularized" and "actual or imminent; 2) a "causal connection between the injury and the conduct complained of," meaning that the injury is "fairly traceable" to the defendant's actions; and 3) a likelihood that the injury "will be redressed by a favorable decision." Id. at 560–61.

Where, as here, plaintiff seeks declaratory and injunctive relief, plaintiff also must "establish an ongoing or future injury in fact." Kenny, 885 F.3d at 287 (citing O'Shea v. Littleton, 414 U.S. 488, 495–96, (1974)). To do so, plaintiff's complaint must "plausibly alleg[] a real and immediate threat of repeated injury." Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 455 (4th Cir. 2017) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).

In Nanni, the United States Court of Appeals for the Fourth Circuit addressed the injury in fact requirement in the context of an ADA claim. The plaintiff in that case sought an injunction requiring a highway rest stop marketplace ("the marketplace") to become "accessible to and usable by individuals with disabilities." Nanni, 878 F.3d at 449. The plaintiff, who relied on a wheelchair for mobility, alleged that he visited the marketplace at least three to four times within a three-year period because it provided "a perfect place to stop to rest on drives and to take bathroom breaks" while traveling from his residence in Delaware to Baltimore and Washington, D.C. Id. During his visits, however, plaintiff "encountered major obstacles" including sidewalk ramps with "excessive running slopes" and "noncompliant parking spaces that caused problems with entering and exiting [his] vehicle and required him to use extra care to avoid falling" among others. Id. at 450.

Finding those injuries to be sufficiently "concrete, particularized, and actual[,]" the Fourth Circuit held "a past injury is sufficiently pleaded for purposes of an ADA claim where a disabled individual who requires a wheelchair for mobility alleges that he has personally encountered noncompliant architectural barriers and describes how those barriers caused him harm." Id. at 455. Moreover, since plaintiff alleged a past injury at a particular location, the Fourth Circuit held that his "plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury." Id. Accordingly, the court held that the plaintiff had standing to sue.

Under Nanni, plaintiff has sufficiently pleaded a past injury. First, plaintiff indicates she is a disabled individual who relies on a wheelchair for mobility. (Pl. Compl. (DE 1) ¶ 20). Furthermore, plaintiff alleges she visited defendant's Peach Street location within the last year, where she personally encountered "excessive slopes in a purportedly accessible parking area." (Id. ¶ 23). Finally, plaintiff describes how these "noncompliant architectural barriers" caused her harm

5

by stating they created "unnecessary difficulty and risk" and "significantly impeded" her "ability to access and safely use defendant's facilities." (Id. ¶¶ 23, 25). Accordingly, plaintiff satisfies the requirements for pleading a past injury. See Nanni. 878 F.3d at 455; see also Mielo v. Steak 'n Shake Operations, 897 F.3d 467 (3d Cir. 2018) (finding past injury where plaintiff alleged she "experienced unnecessary difficulty and risk due to excessive surface slope in purportedly accessible parking spaces and excessive cross slope along the route connecting purportedly accessible parking spaces to the facility's entrance.").

Defendant argues that plaintiff fails to allege a past injury because she "does not say when she visited the Peach Street location, how many times she visited, the purpose of her visit(s), what she did or attempted to do while there, or what specific alleged ADA violations she encountered." (Def. Mem. (DE 13) at 9).[1] However, this level if specificity is not required. See Nanni, 878 F.3d at 456 (rejecting the district court's conclusion that plaintiff's complaint must allege specifics such as the names of goods and services plaintiff seeks to obtain or precise dates of visits).

Turning to the future injury requirement, plaintiff alleges that she plans to return to the Peach Street location at least six times a year because "it is convenient for her to stop by regularly to [sic] when she visits a friend in the area, or on one of her regular trips downtown to continue to test defendant's facilities compliance with the ADA." (Pl. Compl. (DE 1) ¶ 24). Plaintiff's intentions to return to the Peach Street location are "entirely plausible" in light of its proximity to her Knightdale residence. Nanni, 878 F.3d at 457. Thus, under Nanni, plaintiff has sufficiently demonstrated the likelihood of future injury at the Peach Street location. 878 F.3d at 455.

---

[1] Page numbers in citations to documents in the record specify the page number designated by the court's electronic case filing (ECF) system, and not the page number, if any, showing on the face of the underlying document.

("[W]hen an ADA plaintiff has alleged a past injury at a particular location, his plausible intentions to thereafter return to that location are sufficient to demonstrate the likelihood of future injury.").

Next, the court considers whether plaintiff's alleged injury is "fairly traceable" to defendant's actions. This requirement "ensure[s] that the injury complained of is not the result of the independent action of some third party not before the court." Friends of the Earth Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 162 (4th Cir. 2000) (citing Lujan, 504 U.S. at 560). Accordingly, there must be a "genuine nexus between a plaintiff's injury and a defendant's alleged illegal conduct." Id. at 161 (citing Lujan, 504 U.S. at 560).

Here, regarding defendant's "alleged illegal conduct," plaintiff states in conclusory fashion that "defendant either employs policies that fail to make defendant's facilities accessible or usable and/or that Defendant employs maintenance and operational policies and practices that are unable to maintain accessibility." (Pl. Compl. (DE 1) ¶ 33) (emphasis added). As purported evidence of these "centralized" policies, plaintiff list four slopes of varying percentages allegedly measured at four of defendant's locations. (See id. ¶ 31). Yet, plaintiff fails to explain how four slopes of inconsistent measurements imply the existence of a centralized policy. Indeed, even plaintiff later suggests that defendant lacks a centralized policy regarding its parking lots. (See Resp. (DE 18) at 20).

Plaintiff's contradictory, speculative allegations fail to establish a "genuine nexus" between her injury and defendant's conduct, instead of some other cause. See Simon v. E. Kentucky Welfare Rights Org., 426 U.S. 26, 44 (1976) ("[U]nadorned speculation will not suffice to invoke the federal judicial power."); see e.g., Chapman v. CKE Rest. Holdings, Inc., 5:19-CV-189-D, 2020 WL 1230130, at *5 (E.D.N.C Mar. 12, 2020) (finding contradictory, speculative allegations about a centralized policy insufficient to confer standing in light of other potential

7

causes including "improper construction, faulty modification, weather, an inadequate policy, rogue disobedience of the policy, poor execution of the policy or some other cause").

Cases cited by plaintiff are distinguishable. For example, while the court in Colorado Cross-Disability Coal. v. Abercrombie & Fitch Co., No. 09-CV-02757, 2011 WL 2173713 (D. Colo. June 2, 2011) found plaintiff's allegations of a "uniform policy and design creating common barriers" sufficient to confer standing, the plaintiff in that case did not rely on contradictory, speculative allegations to establish the uniform policy. Instead, plaintiff quoted a 10-K form defendant submitted to the Security and Exchange Commission, which stated, "Every brand displays merchandise uniformly to ensure a consistent store experience, regardless of location. Store managers receive detailed plans designating fixture and merchandise placement to ensure coordinated execution of the Company-wide merchandising strategy." Colorado Cross-Disability Coal., 2011 WL 2173713, at *4. Here, in contrast, plaintiff relies on "bare assertions, devoid of factual enhancement," to establish a common or uniform policy. Nemet Chevrolet, Ltd., 591 F.3d at 255.

Plaintiff's reliance on Gray v. Golden Gate Nat. Recreational Area, 279 F.R.D. 501 (N.D. Cal. 2011), California for Disability Rights, Inc. v. California Dep't of Transp., 249 F.R.D. 334 (N.D. Cal. 2008), is also misplaced, where the court in those cases did not address whether plaintiffs' allegations of a common policy were sufficient to confer standing, but rather considered whether a putative class challenging an allegedly discriminatory policy satisfied Rule 23(a)'s commonality and typicality requirements. See Gray, 279 F.R.D. at 509—511; Californians for Disability Rights, 249 F.R.D. at 344—46.

Finally, the court addresses the third element of standing, which requires it to be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan,

8

504 U.S. at 560 (internal quotations omitted).  When seeking injunctive relief, a plaintiff shows "redressability by alleging a continuing violation or the imminence of a future violation of the statute at issue." Friends of the Earth Inc., 204 F.3d at 162 (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)).

Here, plaintiff alleges that, without injunctive relief, she will "continue to be unable to fully and safely access Defendant's facilities in violation of her rights under the ADA." (Pl. Compl. (DE 1) ¶ 27).  However, where plaintiff fails to show her injury is fairly traceable to defendant, she likewise fails to show that an injunction directed at defendant will redress her injury.  Even if plaintiff's injury was fairly traceable to defendant, the court cannot ascertain from plaintiff's pleadings whether defendant employs a centralized policy under which it fails to make its facilities accessible, whether defendant employs a policy under which it cannot maintain accessibility, or whether defendant employs a uniform policy at all.  Accordingly, if plaintiff succeeded on the merits, the court would be relegated to simply enjoining defendant from violating the ADA, and such an "obey the law" injunction is disfavored.  See City of New York v. United States Dep't of Def., 913 F.3d 423, 431 (4th Cir. 2019) (stating an "obey the law" injunction is "disfavored"); United States E.E.O.C. v. Fed. Express Corp., No. WDQ-04-3129, 2006 WL 1134208, at *2 (D. Md. Apr. 25, 2006) ("The ADA remains in effect, and an injunction to obey that law would add nothing.").

In sum, where plaintiff's injury is not "fairly traceable" to defendant or likely to be redressed by a favorable judicial decision, plaintiff lacks standing.  As such, defendant's motion to dismiss is granted.[2]

2. Class Allegations

---

[2] Having granted defendant's motion to dismiss for lack of standing, the court does not reach defendant's argument that plaintiff fails to state a claim upon which relief can be granted.

Where plaintiff lacks standing to bring her individual claims, she also lacks standing to bring claims on behalf of a nationwide putative class. See Simon, 426 U.S. at 40 n.20 ("That a suit may be a class action, however, adds nothing to the question of standing."); Dreher v. Experian Info. Sys., Inc., 856 F.3d 337, 343 (4th Cir. 2017) ("In a class action matter, we analyze standing based on the allegations of personal injury made by the named plaintiff.") (internal quotations omitted).

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion to dismiss for lack of standing (DE 12). Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE. Within **21 days**, plaintiff is ALLOWED to file a motion for leave to amend correcting the deficiencies noted herein, together with proposed amended complaint, and a redline showing changes made. Should plaintiff fail so to file, the clerk is DIRECTED to close this case without further order from the court.

SO ORDERED, this the 23rd day of March, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge